Paul Gattone
State Bar Number 012482
LAW OFFICE OF PAUL GATTONE
312 S. Convent
Tucson, Arizona 85701
(520) 623-1922
**Attorney for Plaintiff**

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

GUADALUPE GONZALEZ, PHILLIP
NELSON, CHRISTOPHER SHERIDAN,
BRIAN STALLINGS, WILLIAM RICE,
[and STEVE BARGER],

    Plaintiffs,

Vs.

ADC Director, CHARLES RYAN, ASPC-
Lewis Warden CHRIS MOODY, ASPC-
Lewis Deputy Warden BURQUESS, ASPC-
Lewis Assistant Deputy Warden
SUMMERS, ADC Major GRABOWSKI,
ADC Captain WHITTING, ADC
Correctional Officer IV GARRISON, ADC
Correctional Officer II REED, ADC
Correctional Officer II FINK, ADC
Correctional Officer II HARVEY, ADC
Correctional Officer II METCALF, ADC
Correctional Officer II CARDINALE, ADC
Correctional Officer II DELGADO, ADC
Correctional Officer II ROMAN, ADC
Correctional Officer II PERRY

    Defendants.

No. CV 15-1200-PHX-PGR (MHB)

**FIRST AMENDED CIVIL RIGHTS
COMPLAINT FOR DAMAGES**

Comes now the Plaintiff who alleges:

**INTRODUCTION**

1. This civil action for damages is based on physical and emotional harm inflicted on the Plaintiffs by the Defendants while acting in their capacity as law enforcement officers and

- 1 -

governmental agents of the Arizona Department of Corrections.  Defendants deprived Plaintiffs of their civil rights, privileges and immunities as guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution. This civil action for money damages is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Eighth and Fourteenth Amendments to the United States Constitution and under the law of the State of Arizona.

2.     This Court also has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

**PARTIES**

3.     Plaintiff Guadalupe Gonzalez is a thirty-four old man who was incarcerated in the Arizona State Prison Complex – Lewis, Bachman Unit in Buckeye, Arizona at the time of the incidents alleged in this complaint.

4.     Plaintiff Phillip Nelson is a thirty-three year old man who was incarcerated in the Arizona State Prison Complex – Lewis, Bachman Unit in Buckeye, Arizona at the time of the incidents alleged in this complaint.

5.     Plaintiff Christopher Sheridan is a thirty-seven year old man who was incarcerated in the Arizona State Prison Complex – Lewis, Bachman Unit in Buckeye, Arizona at the time of the incidents alleged in this complaint.

6.     Plaintiff Brian Stallings is a forty-eight year old man who was incarcerated in the Arizona State Prison Complex – Lewis, Bachman Unit in Buckeye, Arizona at the time of the incidents alleged in this complaint.

7.     Plaintiff William Rice is a thirty-one year old man who was incarcerated in the Arizona State Prison Complex – Lewis, Bachman Unit in Buckeye, Arizona at the time of the incidents alleged in this complaint.

8.      [Plaintiff Steve Barger is a forty-one year old man who was incarcerated in the Arizona State Prison Complex – Lewis, Bachman Unit in Buckeye, Arizona at the time of the incidents alleged in this complaint.]

9.      ~~Defendant Charles Ryan is, and at all times relevant to the facts alleged herein was, the Director of the Arizona Department of Corrections.  Defendant Ryan is responsible for the actions, omissions, policies, procedures, practices and customs of the various agents and agencies of the Arizona Department of Corrections, including the ASPC –Lewis and its agents and employees.  At all times relevant to the facts alleged herein, Defendant Ryan was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the Arizona Department of Corrections and its employees complied with the laws and Constitution of the United States.~~

10.     ~~Defendant Chris Moody is, and at all times relevant to the facts alleged herein was, the Warden of the Arizona State prison Complex – Lewis in Buckeye, Arizona.  Defendant is responsible for actions, omissions, policies, procedures, practices and customs of the various agents and agencies of the Arizona State Prison Complex –Lewis and its agents and employees. At all times relevant to the facts alleged herein, Defendant Moody was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the Arizona State Prison Complex –Lewis and its employees complied with the laws and Constitution of the United States.~~

11.     ~~Defendant Burquess was, and at all times relevant to the facts alleged herein was, the Deputy Warden of the Arizona State prison Complex – Lewis in Buckeye, Arizona.  Defendant is responsible for actions, omissions, policies, procedures, practices and customs of the various agents and agencies of the Arizona State Prison Complex –Lewis and its agents and employees. At all times relevant to the facts alleged herein, Defendant Burquess was responsible for assuring that the~~

~~actions, omissions, policies, procedures, practices and customs of the Arizona State Prison Complex – Lewis and its employees complied with the laws and Constitution of the United States.~~

12.     Defendant Summers was, and at all times relevant to the facts alleged herein was, the Assistant Deputy Warden of the Arizona State prison Complex – Lewis in Buckeye, Arizona. Defendant is responsible for actions, omissions, policies, procedures, practices and customs of the various agents and agencies of the Arizona State Prison Complex –Lewis and its agents and employees.  At all times relevant to the facts alleged herein, Defendant Summers was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the Arizona State Prison Complex – Lewis and its employees complied with the laws and Constitution of the United States.

13.     Defendant Major Grabowski was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

14.     Defendant Captain Whitting was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

15.     Defendant CO IV Garrison was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

16.     Defendant CO II and TSU agent Reed was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

17. Defendant TSU Agent Fink was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

18. Defendant CO II and TSU agent Harvey was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

19. Defendant CO II and TSU agent Metcalf was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

20. Defendant CO II and TSU agent Cardinale was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

21. Defendant CO II and TSU agent Delgado was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

22. Defendant CO II and TSU agent Roman was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

23. Defendant CO II and TSU agent Perry was, and is at all times relevant to the facts alleged herein, a duly appointed correctional officer of the Arizona Department of Corrections acting within the course and scope of his employment and under color of state law.

24. At all times relevant to the facts alleged herein, all individual Defendants were duly appointed, qualified and sworn personnel and/or agents of the Arizona Department of Corrections, employed as such and by the Office and acting within the course and scope of their employment and/or agency and under color of state law.

25. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as agent, employee or under the direction and control of the others. All such acts and failures to act were within the scope of such agency and/or employment and under color of law, and each Defendant participated in, approved and/or ratified the acts and omissions of other Defendants complained of herein.

26. Plaintiffs sue all Defendants in their individual capacities.

**FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION**

27. On July 7, 2014, Plaintiffs were inmates at Arizona State Prison Complex – Lewis.

28. They were all housed in the Bachman Unit, Building 5.

29. A homicide had occurred in Building 4 of the Bachman Unit on July 4, 2014 and all inmates housed in the Bachman Unit were taken outside so that TSU could conduct a search of the unit.

30. The inmates in Building 5, including Plaintiffs, were removed from the unit in the afternoon so that TSU could conduct.

31. The inmates were forced to sit on the basketball court in the recreation yard.

32. Defendant Whitting advised TSU that it would not be a good idea to put the inmates on the recreation yard while the search was conducted due to the outside temperature.

33. Defendants Fink, Harvey, Metcalf, Cardinale, Delgado, Roman, and Perry disregarded this and forced the inmates to sit on the basketball court in the recreation yard.

34. Once outside, Plaintiffs were forced to sit Indian style on the basketball court, facing forward and not to speak.

35. Plaintiffs were told if they did not do this, they would be placed in the "pumpkin patch," a position in which the inmate is handcuffed with his hands behind his back and placed face down in the dirt.

36. While they were sitting outside, Plaintiffs noticed other inmates placed in the pumpkin patch for not adhering to the direction to sit Indian style and not speak.

37. Plaintiffs chose to comply with the directive and remained seated Indian style, facing forward and not speaking.

38. On this date, the temperature in Buckeye, Arizona reached 107 degrees Fahrenheit.

39. Defendant Summers took the temperature of the concrete which was 143 degrees Fahrenheit.

40. Despite this temperature, Defendant Summers did not order the inmates be removed from the concrete.

41. Plaintiffs did not complain about the conditions for fear of being placed in the "pumpkin patch."

42. [While on seated on the concrete, Plaintiff Barger noticed that his shower shoes were coming apart because the sides of his shoes were melting from the heat of the concrete.

43. Plaintiff Barger informed a TSU officer that he needed new shower shoes because his were falling apart.

44. This TSU officer told Plaintiff Barger he could get new shower shoes when he got inside.]

45. As a result of being seated on the concrete, Plaintiffs suffered severe contact burns.

46. Defendants Fink and Reed were alerted to the burns while Plaintiffs were still seated on the concrete.

47. Defendants Fink and Reed allowed Plaintiff Nelson to sit in the shade when they saw the burns he had sustained.

48. Defendants Fink and Reed did not check to see if any other inmates had suffered similar injuries nor did they let any other inmates sit in the shade.

49. [When the inmates were told to go back inside, Plaintiff Barger informed Defendant Cardinale that he needed new shower shoes and could not walk across the concrete in his shower shoes because they had melted and showed Defendant Cardinale his melted shower shoes.

50. Defendant Cardinale told Plaintiff Barger that he could get new shower shoes when he got inside.

51. Plaintiff Barger informed Defendant Cardinale that the concrete was too hot to walk across and Defendant Cardinale told him he could just try and run around other people to get inside faster.

52. However, Plaintiff Barger was still forced to run over hot concrete barefoot.

53. Plaintiff Barger suffered severe burns and blisters on the bottom of his feet.]

54. Plaintiff Nelson suffered second degree burns on his leg.

55. Plaintiff Stallings suffered second and third degree burns on his legs.

56. Plaintiff Gonzalez suffered second and third degree burns on his buttocks that took over a month to heal. Plaintiff Gonzalez suffered nerve damage as a result of the burns.

57. Plaintiff Sheridan suffered second and third degree burns on his buttocks.

58. Plaintiff Rice suffered serious burns on his buttocks that took over a month to heal.

59. Once the inmates were allowed back into their unit, they alerted some correctional officers who documented the injuries sustained by Plaintiffs.

60. Plaintiffs were given aspiring for the pain and Aloe Vera to apply to their burns.

61. However, Plaintiffs were never seen by a doctor nor given proper medical treatment to treat their severe burns.

62. Defendants Grabowski, Whitting, Garrison, Reed, Fisk, Harvey, Metcalf, Cardinale, Delgado, Roman, and Perry were all involved in the search of the unit.

63. The Defendants from Paragraph 53 all forced Plaintiffs to sit outside on the concrete despite their knowledge of the extreme outside temperatures and risk of injury to Plaintiffs.

64. Because of Defendants actions, all Plaintiffs suffered severe contact burns from the concrete.

65. This was not the first incident of this nature at Lewis Complex.

66. In March 2014, inmates from the Bachman Unit were forced to sit outside during a search of the unit following a homicide.

67. The inmates from this incident received sunburns, not surface burns since March is not as hot as July.

68. These inmates filed grievances and exhausted their administrative remedies, putting Defendants ~~Ryan, Moody, Burquess~~, and Summers on notice that inmates were subjected to these conditions during TSU searches of units.

69. Despite the incident from March 2014, and Defendants ~~Ryan, Moody, Burquess~~, and Summers on notice of the conditions, they still allowed TSU agents to implement this procedure during a search of the Bachman Unit on July 7, 2014.

70. Defendants ~~Ryan, Moody, Burquess~~, and Summers did not change the policy of TSU searches until after the incident on July 7, 2014.

71. Plaintiffs were notified in response to their grievances that the Bachman Unit had begun to draft protocol to avoid future incidents, despite this not being the first incident of this nature.

72. Each Defendant acted or failed to act in a manner that contributed to the violations of the law set out below.  They participated in a common operation that resulted in the above described violation of Plaintiff's civil rights, or allowed acts to be set in motion that they knew or should have known would lead to these injuries and illegal consequences.

73. As a direct and proximate result of the above acts of the Defendants, Plaintiff suffered the following injuries and damages:

A) Violation of his constitutional rights under color of state law:

B) Physical, mental and emotional pain and suffering:

C) Violation of his right under the Eight Amendment to the United States Constitution to be free from cruel and unusual and excessive punishment.

**~~COUNT ONE~~**
~~(42 U.S.C. § 1983 Against All Defendants)~~

~~74.    Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.~~

~~75.    Plaintiffs claim damages under 42 U.S.C. §1983 against Defendants for violating their civil rights under color of state law.~~

~~76.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered physical pain and suffering, mental injury, mental anguish and emotional losses.~~

**COUNT TWO**
(Constitutional Violations – Eighth and Fourteenth Amendment Claims)

77.    Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs, as though fully set forth herein.

78.    Plaintiffs claim damages under the Eighth and Fourteenth Amendments to the United States Constitution for violation of their rights to be free from cruel and unusual punishment.

79.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered physical pain and suffering, mental injury, mental anguish and emotional losses.

**CLAIM FOR RELIEF**

WHEREFORE, the Plaintiff asks that this court grant him the following relief:

    a. General damages against Defendants in an amount to be determined upon consideration of the evidence;

    b. Punitive damages against Defendants in an amount to be determined upon consideration of the evidence;

    c. Costs of this suit;

    d. Attorney's fees pursuant to applicable statutes, including, inter alia, 42

- 11 -

U.S.C. §§ 1983 and 1988;

    a.   Granting any and all other relief that the court deem appropriate.


JURY TRIAL DEMANDED



REPECTFULLY SUBMITTED this 23rd day of October 2015.



           _s/Paul Gattone_____
           Paul Gattone
           Attorney for Plaintiff